UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSHAWN WARD,

                Plaintiff,

    v.

ADRIAN COLEY, *et al.*,

                Defendants.

No. 18-CV-2382 (KMK)

OPINION & ORDER

Appearances:

Roshawn Ward
Rome, NY
*Pro Se Plaintiff*

Sean Timothy Carey, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants Coley, Cesark, and Lombardo*

Paul Andrew Sanders, Esq.
Jonathan H. Bard, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants Stoddard and Palmieri*

KENNETH M. KARAS, United States District Judge:

    Roshawn Ward ("Plaintiff"), currently incarcerated at Mohawk Correctional Facility, brings this pro se Action under 42 U.S.C. § 1983 against Adrian Coley ("Coley"), Robert Cesark ("Cesark"), and Alfred Lombardo ("Lombardo") (collectively, "County Defendants"), as well as Hebert M. Stoddard, M.D. ("Dr. Stoddard") and Lisa Palmieri ("Nurse Palmieri") (collectively, "Medical Defendants").[1] Plaintiff alleges that County and Medical Defendants exhibited

---

[1] In his Complaint, Plaintiff identifies Defendants as "W.C.D.O.C. Captain Colely"; "W.C.D.O.C. Correction Officer Cosark"; "W.C.D.O.C. E.R.T. Sergent Lombardo"; "C.C.S. P.A. Dr. Stoddard"; and "C.C.S. Nurse Lisa M. Palmieri." (Compl. 1–2 (Dkt. No. 1).) The

deliberate indifference to his medical needs and used excessive force against him, in violation of his constitutional rights, and committed related state-law torts against him. Before the Court are Motions To Dismiss filed by County and Medical Defendants (the "Motions"). (*See* Dkt. Nos. 16, 28.)

For the following reasons, the Motions are granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, (Dkt. No. 1), and are taken as true for the purpose of resolving the instant Motions.

On October 9, 2017, Plaintiff was incarcerated at Westchester County Jail. (Compl. 3.)[2] At approximately 3:25 p.m., while in the gym, Plaintiff asked an unnamed prison official to use the restroom. (*Id.*) Plaintiff went to the restroom and, as he was flushing the toilet, "the ceiling came down on [his] head," causing him to "slip and fall" and injure his "[w]hole body." (*Id.*) Thereafter, unnamed medical staff arrived, "put [Plaintiff] in a wheelchair after several failed attempts," and took him to the clinic. (*Id.*) Plaintiff received a medical evaluation and was prescribed several painkillers and other drugs. (*Id.*) At some point, Plaintiff told medical staff and an unnamed emergency response team ("E.R.T.") member that he "couldn't feel [his] legs" or that his "head, neck, back, [and] hand [were] hurting," and that he could not walk back to his cell block. (*Id.*) However, the E.R.T. member "used excessive force on" Plaintiff by "yank[ing] [him] out of the wheelchair" and "then [throwing] [him] up against the wall." (*Id.*) This caused

---

Court uses the complete and correct spellings of Defendants' names as provided by Defendants. The Clerk of Court is directed to update the docket accordingly.

[2] The Complaint does not use consistent numbering. For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top right-hand corner of the Complaint.

2

Plaintiff to "[fall] to his knees because [he] couldn't support [his] own weight." (*Id.*) Plaintiff was then "lifted up by the chain in the middle of the handcuffs that [were] behind [his] back" and "dragged to [his] cell block." (*Id.*) By then Plaintiff was in "excruciating pain" and "couldn't breath[e]"; he "spit up on the elevator floor" and was "screaming [and] crying in pain." (*Id.*) Further, Plaintiff was "denied [his] hygiene [and] forced to stay wit[h] the debris from the ceiling [and] the watery substance that came down with it on [him]." (*Id.*)

B.  Procedural Background

Plaintiff's initial Complaint was filed on March 16, 2018.  (Dkt. No. 1.)  On April 4, 2018, Plaintiff filed an application to proceed without prepayment of fees, that is, in forma pauperis ("IFP"), (Dkt. No. 4), which was granted on April 11, 2018, (Dkt. No. 5).  On April 18, 2018, the Court issued an Order directing service on Defendants, (Dkt. No. 7), and Defendants were thereafter served, (Dkt. Nos. 12, 13, 20, 21, 22).

On July 6, 2018, Medical Defendants filed their Motion To Dismiss and accompanying papers.  (Not. of Mot. (Dkt. No. 16); Decl. of Jonathan H. Bard, Esq. in Supp. of Mot. (Dkt. No. 17); Medical Defs.' Mem. of Law in Supp. of Mot. ("Med. Defs.' Mem.") (Dkt. No. 18).)  Plaintiff filed a responsive letter on August 9, 2018, (Letter from Roshawn Ward to Court ("Pl.'s Mem.") (Dkt. No. 25)), which the Court construed as Plaintiff's opposition, (Dkt. No. 26).  On August 20, 2018, Medical Defendants filed a reply.  (Medical Defs.' Reply Mem. of Law in Further Supp. of Defs.' Mot. ("Med. Defs.' Reply") (Dkt. No. 27).)

On August 24, 2018, County Defendants filed their Motion To Dismiss and accompanying papers.  (Not. of Mot. (Dkt. No. 28); Decl. of Sean T. Carey, Esq. in Supp. of Mot. (Dkt. No. 29); County Defs.' Mem. of Law in Supp. of Mot. ("County Defs.' Mem.") (Dkt.

3

No. 30).) Plaintiff did not respond to this Motion. However, the Court will construe Plaintiff's August 9, 2018 letter as his opposition to County Defendants' Motion. (*See* Pl.'s Mem.)

II. Discussion

Medical and County Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to allege personal involvement, for failure to state a *Monell* claim, for failure to state an Eighth Amendment deliberate indifference claim, and for failure to allege any state-law claim. (*See generally* Med. Defs.' Mem; Med. Defs.' Reply; County Defs.' Mem.) The Court addresses each argument separately.

A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

4

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

5

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

B. Analysis

1. Personal Involvement

Medical and County Defendants argue that the Complaint fails to allege that any Defendant was personally involved in the alleged deliberate indifference or excessive force violations. (*See* Med. Defs.' Mem. 5–6; County Defs.' Mem. 5.)

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

6

*Id.* at 139 (citation, italics, and quotation marks omitted). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Here, as Defendants correctly point out, (*see* Med. Defs.' Mem. 6; County Defs.' Mem. 5), although Plaintiff names each Defendant in the caption of his Complaint, (*see* Compl. 1–2), he fails to name any Defendant anywhere in the body of the Complaint or otherwise connect any Defendant to the substantive allegations of inadequate medical care or excessive use of force raised in the Complaint, (*see id*. at 3–5). Plaintiff thus fails to allege that any particular Defendant "participated directly" or indirectly in the allegations, that any Defendant established a policy or custom that caused the alleged violations or allowed them to occur, that any Defendant exhibited gross negligence, that any Defendant failed to remedy the situation after the allegations occurred, or that any Defendant was informed of and deliberately ignored Plaintiff's the alleged violations. *See King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018) (holding personal involvement not shown where the "plaintiff includes [the defendant's] name in the case caption but fails to make any substantive allegations against her in the body of the complaint").

Plaintiff responds that he "did indeed state [and] referred to [the] 'CCS Defendants' as the 'CCS staff members' on [his] notice of claim because [he] never knew the . . . names of the individual staff members at that time," and that he "referred to . . . 'E.R.T. Sergeant Lombardo'

7

as the 'E.R.T.' because you can't see the names of any of the 'E.R.T'" members. (Pl.'s Mem. 1.) However, regardless what Plaintiff stated on his notice of claim — a document that must be filed as a condition precedent to asserting a tort claim against a County, *see* N.Y. Gen. Mun. Law §§ 50-e, 50-i, and which is not attached to Plaintiff's filings — the fact remains that in his Complaint, the operative document before the Court, Plaintiff does not refer to any Defendant by name save in the caption.

Plaintiff requests that, to the extent he "wasn't clear" as to personal involvement in his Complaint, the Court consider the additional factual allegations as provided in his memorandum. (Pl.'s Mem. 1.) The Court grants this request. *See Alsaifullah*, 2013 WL 3972514, at *4 n.3 (noting that the court will "consider[] the factual allegations contained in [the] [p]laintiff's opposition papers . . . to the extent that they are consistent with the allegations contained in the Complaint"). Plaintiff thus clarifies, as to his deliberate indifference claim, that Nurse Palmieri and Dr. Stoddard injured Plaintiff's back by "trying to pick [him] up" and place him in a wheelchair despite Plaintiff's protestations of pain and the objective evidence that Plaintiff was in severe pain; that Dr. Stoddard, after treating Plaintiff with medication, improperly cleared Plaintiff to return to his cell despite his injuries; and that Cesark denied Plaintiff a shower, thus leaving him "in [his] cell [with] soiled clothes from the watery substance [and] debris that fell on [him]." (Pl.'s Mem. 1–3.) These supplementary factual allegations, although far from robust, at least match Defendants' names to specific alleged facts. Construed liberally, they are sufficient, at least at the motion-to-dismiss stage, to show that Dr. Stoddard, Nurse Palmieri, and Cesark "participated directly" in Plaintiff's medical care and the alleged constitutional violations. *Grullon*, 720 F.3d at 139. Accordingly, Plaintiff sufficiently alleges the personal involvement of Dr. Stoddard, Nurse Palmieri, and Cesark in his deliberate indifference claim. *See Taylor v. City*

*of New York*, No. 16-CV-7857, 2018 WL 1737626, at *11 (S.D.N.Y. Mar. 27, 2018) (holding that the "[p]laintiff clearly pleads the direct involvement of [the defendant]" who "was present at the scene of the" alleged violation (citation and quotation marks omitted)); *see also Francis v. City of New York*, No. 17-CV-1453, 2018 WL 4659478, at *6 (S.D.N.Y. Aug. 21, 2018) (Pitman, Mag. J.) (holding that, although the plaintiff "could be more specific about the role each of the [i]ndividual [d]efendants played in th[e] decision" to "authorize[]" his "removal from protective custody," thereby exposing him to harm, the "plaintiff has adequately alleged personal involvement").[3]

However, as to the excessive force claim, Plaintiff only states that unnamed "C.C.S. staff members . . . violently yanked [Plaintiff] out of the wheelchair and [threw] [him] up against the wall," and sometime later "lifted [Plaintiff] up by the chain in the middle of the handcuffs [and] dragged [him] back to [his] cell block screaming [and] crying in pain"; that Lombardo, who was in charge of the E.R.T. that day, failed to stop the unnamed C.C.S. members from doing as much; and that the unnamed C.C.S. members ignored Plaintiff's asthma for several hours "until the 11pm–7am sergeant" — identified as Sergeant Tosi, who is not named as a Defendant — "personally took [Plaintiff] to medical himself" for "the proper care for [his] asthma condition." (Pl.'s Mem. 2–3.) These allegations do not satisfy the personal involvement requirement. Plaintiff does not identify which Defendant, if any, "yanked" him from his wheelchair, threw him against the wall, picked him up by the handcuffs, or denied him asthma treatment. Rather, Plaintiff alleges only that "Lombardo" was "in charge" that day. (*Id.* at 2.) This threadbare

---

[3] The Court further notes that Medical Defendants, in their reply to Plaintiff's opposition, do not continue to argue the personal involvement point; rather, they focus their argument on the merits. (*See generally* Med. Defs.' Reply.)

9

allegation fails to connect Lombardo to the alleged constitutional deprivation. Plaintiff does not allege that Lombardo "participated directly" in or was present at the scene of the incidents, that Lombardo was responsible for a "policy or custom" that allowed the incidents to occur, that Lombardo was "informed" of the incidents and "failed to remedy the wrong," that Lombardo's "gross[] negligen[ce]" allowed the incidents to occur, or that Lombardo otherwise "exhibited deliberate indifference" as to Plaintiff's condition. *Grullon*, 720 F.3d at 139. Accordingly, Plaintiff fails to allege the personal involvement of Lombardo, or any other Defendant, in his excessive force claim. *See Gantt v. Ferrara*, No. 15-CV-7661, 2018 WL 4636991, at *6 (S.D.N.Y. Sept. 27, 2018) (holding personal involvement not established where the plaintiff "made no factual connection between [the defendant's] training and supervision and the alleged assault by [another official]"); *Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding personal involvement not established where the plaintiff failed to allege the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation); *Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (holding personal involvement not established where "[t]he [c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted" the violation, or even "interacted with [the plaintiff]").[4]

---

[4] Plaintiff also states that Coley, Lombardo, Dr. Stoddard, and Nurse Palmieri all acted in a "very unprofessional way" and thus caused Plaintiff to suffer severe pain and nightmares. (Pl.'s Mem. 3–4.) This conclusory allegation fails entirely to state any claim and thus also fails to establish the personal involvement of any Defendant in a constitutional violation.

### 2. Deliberate Indifference to Medical Needs

Plaintiff claims that Medical Defendants — Dr. Stoddard and Nurse Palmieri — were deliberately indifferent to his serious medical needs. Because Plaintiff was a state pretrial detainee at the time of the allegations, his claims are analyzed under the Due Process Clause of the Fourteenth Amendment. *See Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) ("We have often applied the Eighth Amendment deliberate indifference test to pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth Amendment."); *see also Scalpi v. Town of East Fishkill*, No. 14-CV-2126, 2016 WL 858944, at *12 n.15 (S.D.N.Y. Feb. 29, 2016) (collecting cases for the proposition that "the Court treats [Eighth Amendment] allegations as brought under the Due Process Clause of the Fourteenth Amendment [where the plaintiff] was confined as a pre-trial detainee").

The Second Circuit recently held that deliberate indifference claims under the Fourteenth Amendment are analyzed somewhat differently than the same claims under the Eighth Amendment, which applies to inmates who have been convicted and sentenced. *See Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). That is because pretrial detainees "have not been convicted of a crime and thus may not be punished in any manner." *Id.* at 29 (citation and quotation marks omitted).

The overarching framework remains the same. Under both the Eighth and Fourteenth Amendments, to state a deliberate indifference claim an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendant "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element "is evaluated the same way under both the Eighth Amendment and Fourteenth Amendment." *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *19 n.19 (S.D.N.Y. Mar. 30, 2018) (citing *Darnell*, 849 F.3d at 30). This requirement is "objective": The inmate must show that the "the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted). In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). Analyzing the first element involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280 (citation omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). While the Eighth Amendment

imposes a subjective standard — that the prison official "know[] of and disregard[] an excessive risk to inmate health or safety," *Darnell*, 849 F.3d at 32 (citation omitted) — the Fourteenth Amendment imposes an objective standard. That is, the prison official need only "recklessly fail[] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. However, "[d]espite the slightly lower standard articulated in *Darnell*, which is akin to objective recklessness, "any § 1983 claim or a violation of due process requires proof of a *mens rea* greater than mere negligence." *Miller v. County of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (ultimately quoting *Darnell*, 849 F.3d at 36).

### a. Medical Defendants

Plaintiff fails to allege a cognizable claim for deliberate indifference to a serious medical need as to either Dr. Stoddard or Nurse Palmieri. Indeed, Plaintiff acknowledges that he received medical treatment. He alleges that, after being injured by the falling debris from the roof, medical staff, including Dr. Stoddard and Nurse Palmieri, placed him "in a wheelchair" — allegedly further injuring his back in the process — and "wheeled [him]" to the clinic to receive medical attention. (Compl. 3; Pl.'s Mem. 2–3.) Plaintiff further alleges that he was evaluated by Dr. Stoddard, who prescribed him "Naproxen 500 mg, Tylenol 975 mg, heat pad treatments, physical therapy, Flexeril, Mobic 7.5 mg, Cyclobenzaprine 5 mg, and something else due to [Plaintiff's] nightmares." (Compl. 3.) And he alleges that Dr. Stoddard cleared him to return to his cell even though he was "unable to walk" and in serious pain. (Pl.'s Mem. 2–3.)[5]

---

[5] Plaintiff also suggests that he was "denied medical treatment for [his] serious asthma condition," but, in the next sentence, states that, later that day, he "received the proper care for [his] asthma condition." (Pl.'s Mem. 3.) These contradictory and conclusory allegations fail to

13

These allegations clearly show that Medical Defendants, far from ignoring Plaintiff's medical needs or denying or delaying Plaintiff's medical care, in fact promptly provided Plaintiff with medical care. Plaintiff thus expresses a "mere disagreement over the proper treatment" administered to him, which is insufficient to state a deliberate indifference claim provided "the treatment given is adequate." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim."); *id.* at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. Nor does the fact that an inmate might prefer an alternative treatment, or feels that he did not get the level of medical attention he preferred." (citations omitted)). Plaintiff does not allege facts plausibly indicating that the treatment administered to him was inadequate. To the extent Plaintiff alleges Defendants injured his back while placing him in a wheelchair, (Compl. 3; *see also* Pl.'s Mem. 1, 5 (alleging "medical malpractice" and "medical neglect"), "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703; *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim or a violation of due process requires proof of a *mens rea* greater than mere negligence."); *Davidson v. Scully*, 155 F. Supp. 2d 77, 88 n.13 (S.D.N.Y. Aug. 22, 2001) ("[P]oor medical judgment does not constitute deliberate indifference . . . ."). Plaintiff's deliberate indifference claim must therefore fail. *See Allah v. Switz*, No. 14-CV-5970, 2017 WL 519269, at *6 (S.D.N.Y. Feb. 7,

---

allege deliberate indifference to Plaintiff's asthma condition, particularly given that Plaintiff's Complaint fails entirely to mention his asthma. (*See generally* Compl.)

2017) (dismissing deliberate indifference claim where there was "no allegation" that the defendant "failed to offer [the] [p]laintiff *any* medical care" and the plaintiff's claim was limited to the chosen form of treatment); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *7 (S.D.N.Y. Mar. 29, 2016) (noting that "treatment of a prisoner's medical condition generally defeats a claim of deliberate indifference" (citation and quotation marks omitted)); *Ramey v. Perez*, No. 13-CV-17, 2014 WL 407097, at *6 (S.D.N.Y. Jan. 31, 2014) (rejecting deliberate indifference claim where the plaintiff "received medical care immediately after the incident and was cleared by a nurse to return to his cell").

### b. Defendant Cesark

Plaintiff alleges that Cesark refused to allow Plaintiff to shower after the injury, thereby "den[ying]" Plaintiff his "hygiene" and leaving Plaintiff "in [his] cell [with] soiled clothes from the watery substance [and] debris that fell on [him]." (Compl. 1, 3; Pl.'s Mem. 1.) Plaintiff does not allege for how long he was denied a shower. On these allegations, this claim does not rise to the level of a plausible constitutional violation. "Courts in this circuit routinely reject conditions-of-confinement claims based on the temporary denial of showers." *Williams v. Ramos*, No. 13-CV-826, 2013 WL 7017674, at *6 (S.D.N.Y. Dec. 23, 2013); *see also Dolberry v. Levine*, 567 F. Supp. 2d 413, 417 (W.D.N.Y. 2008) (holding that the denial of showers for "several weeks" was not a constitutional violation); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (holding that "a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'" (citation omitted)); *Ramirez v. Holmes*, 921 F. Supp. 204, 208 (S.D.N.Y. 1996) (holding that the denial of a shower on three occasions did not constitute a serious deprivation; *Graham v. Kuhlmann*, No. 88-CV-6618, 1990 WL 210298, at *4 (S.D.N.Y. Dec. 12, 1990) (holding that allowing an inmate one shave and shower per week provided

15

minimally adequate hygiene); *cf. Green v. Maldonodo*, No. 17-CV-957, 2017 WL 3568662, at *3 (D. Conn. Aug. 17, 2017) (holding the plaintiff's allegation that he was repeatedly forced to shower in unsafe conditions sufficed to establish objective element of Eighth Amendment claim). Accordingly, Plaintiff's deliberate indifference claim based on the one-time denial of a shower must be dismissed.

### 3. *Monell* Liability

Plaintiff does not indicate whether he sues Defendants in their individual or official capacities. (*See generally* Compl.; Pl.'s Mem.) In such instances, courts often construe such claims as brought in both capacities. *See, e.g.*, *Frank v. Relin*, 1 F.3d 1317, 1326 (2d Cir. 1993) ("[A] plaintiff who has not clearly identified . . . the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other."); *Jackson v. Ramirez*, No. 15-CV-617, 2016 WL 796854, at *5 (S.D.N.Y. Feb. 22, 2016) (construing complaint "as being brought against the state defendants in both their individual and official capacities" in light of *Frank*), *aff'd*, 691 F. App'x 45 (2d Cir. 2017).

"A claim asserted against a [defendant] in his official capacity . . . is in effect a claim against the governmental entity itself . . . for 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under

16

color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690–91). The fifth element reflects the notion that a *Monell* defendant "may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (noting that a municipality may not be held liable under § 1983 "by application of the doctrine of respondeat superior" (citation and italics omitted)). Rather, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). A plaintiff may satisfy the fifth element by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).

Here, Plaintiff fails to allege that any Defendant acted pursuant to any formal County policy, that any Defendant acted pursuant to an informal practice or custom of the County, that any Defendant was responsible for the promulgation of policies relevant to Plaintiff's claims, or that any Defendant failed to receive adequate training or supervision and, because of that failure, caused Plaintiff's injuries. Accordingly, because Plaintiff does not allege the fifth element required to state a *Monell* claim, any claims against Defendants in their official capacities must be dismissed. *See McKenzie v. City of Mount Vernon*, No. 18-CV-603, 2018 WL 6831157, at *7

(S.D.N.Y. Dec. 28, 2018) (dismissing *Monell* claim where the plaintiff did "not allege any facts suggesting a policy or custom that led to [the] alleged" constitutional deprivation).

### 4. State-Law Claims

Plaintiff appears to allege state-law claims of negligence, intentional infliction of emotional distress, medical malpractice, and defamation. (*See* Compl. 3; Pl.'s Mem. 1–2.) These claims are almost entirely undeveloped. The Court need not, however, resolve whether Plaintiff states any state-law claim. Because the Court concludes that Plaintiff fails to state a § 1983 claim as to any Defendant, the Court declines at this time to exercise supplemental jurisdiction over the state-law claims alleged by Plaintiff. *See Matican v. City of New York*, 524 F.3d 151, 154–55 (2d Cir. 2008) (noting that, if a plaintiff "has no valid claim under § 1983 against any defendant, it is within the district court's discretion to decline to exercise supplemental jurisdiction over the pendent state-law claims").

## III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint and accompanying papers submitted by Plaintiff. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motions, (*see* Dkt. Nos. 16, 28), and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated: February 28, 2019
        White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE